I am Linda Webb. I'm here on behalf of Dennis Suesue, who is the petitioner in this case. We're here on the district court's abuse of discretion multiple times, first with the district court's erroneous view of the law and its evidentiary rulings, and also in the clearly erroneous assessments of the facts. The first, on the erroneous view of law, the denial of the production... the non-production of this video camera on multiple arguments that you've made. Yes, Your Honor. Frankly, it was my view, reading the record, that the government... that there was pretty good claim that the video camera ought to be produced, although there was pretty good argument for not producing it as well. But everything would also require that there be something on the video camera that might be exculpatory. And I could not for the life of me figure out how or where the defendant makes out any case for there being anything on the video camera that's exculpatory or impeaching. I think there's two things, Your Honor. First is that without the reduction of the video camera, of course, that the defendant then is left to the assertions of the prosecution that there's nothing happening. Not really. Not usually that would be so, but in this case, you had the audio recording, which successfully impeached. Right. And that sounds like it does, Your Honor. But on the other hand, also we have Agent King. It did. You've got the agent saying what Susu said to him, and it turned out not to be true. Well... And you had an audio recording to prove it. Well, we also have Agent King saying that when he had the video camera, that he set it up, he's the one that put it together, he was the one that was using it, that he took it off when he was finished. You successfully proved he was a klutz. You successfully proved he was a klutz who misremembered what the defendant had said to him. Well, I agree with that also. But I also think the thing was that he does say that this was he considered it evidence and that it would have shown whether or not Mr. Susu had a gunpoint in that automobile on March 15th. But you've got two eyewitnesses to that, right? You've got the agent and the informant. Frankly, Your Honor, I wouldn't give the informant the time of day. Well, let's go back to who was present. Okay, well... Without regard to characterizing them as witnesses or not. Were there or were there not two people who testified that your client pointed a gun? Well, there's two people in that car that testified to it, yes. On the other hand, I think that you have to look at the entire circumstances in that automobile. Which the jury did. And don't we have to view the jury's determination of the evidence in the light most favorable to support the verdict? Well, I think that's true. But I think here that what you have is a video camera that was known to the prosecution. It certainly should have been if it was not because it was in his agent's hands, the government's agent's hands. Counsel, the problem I'm having is, as Judge Kleinfeld pointed out to you, we've got two witnesses who say your client pointed the gun at the agent. We have an audio recording that corroborates the testimony to the extent that we can't see it, but we can certainly hear what sounds like a gun being trained on the agent. And we've got a jury finding of guilt. I'm back to Judge Kleinfeld's question. Where's the beef here? Where's the exculpatory evidence that shows that none of this happened? Well, I think the thing is, if you look at two cases, Brady where it says if the evidence may be favorable to the defendant, and if you also look at Carringer. There has to be evidence. The problem is you're asking for a fishing expedition. The only thing you can do at this point is say they didn't produce the video camera to me so that my expert could look at it to see whether or not there was anything there. But at this point, that's sheer speculation, as the district court found. That's not evidence. But the problem is we were never given the opportunity to see if there was everything on that, and so whatever you have to do then is rely only on the prosecution's case. Can you cite me one Brady case where there was no evidence in order to establish that something exculpatory was withheld? No, I cannot do that, Your Honor. So this would be a case of first impression under Brady? Well, yes, it would be, Your Honor. But on the other hand, like I said, that if you look at Agent King and what Agent King is saying about what he believed was on that camera and that he believed it was working. And who really is the one that downloaded this camera? Was there a proffer? I mean, it looks to me like what happened was the agent didn't know enough to turn on the camera before he tried to photograph the events. And the events didn't get photographed, but they were audio taped. What I'm really looking for is a proffer of something that would establish that there's some evidence on the camera. They didn't want to show it to the defense because they want to keep their type of surveillance camera secret. So I'm looking for a proffer. Like if there was an affidavit from Susu, I never pointed that gun. The agent was saying that stuff. I don't know what he was talking about when he was talking about pointing the gun. When I was talking about smoking him, what I meant was I felt like a cigarette. I'm looking for some kind of proffer that would make some kind of case here. Well, I think the thing is, Your Honor, that first of all, the context of what Mr. Susu said was taken – actually what he said was taken out of context because he didn't say I'm not going to smoke you. Where's the proffer of what the context is? I mean, I know that what the agent said wasn't quite right and you proved it. And many times I think what the agent said, it was right. Agent King said that he thought that Mr. – he believed that Mr. Susu was threatened by him while he was in the automobile. And that's on the 15th. And then the other thing he says is that he thought that that camera was working. And who really downloaded the camera? Three other agents. None of them. He wasn't the one that downloaded it. Three other agents. And there's no expert testimony. The prosecution had no expert testimony. They had no expert report. It's just three agents. To my question, isn't the burden on you at this stage to come forward with some evidence? Presumably you tried to interview the three agents to ask them to see whether or not there was anything there. Wouldn't you need to show that one of the agents said, yeah, there was something there, but, you know, we just kind of accidentally erased it? Well, I think – I wasn't trial counsel for this, but I think – Well, I say you. I'll say Mr. Susu. Isn't it his burden to establish the Brady violation? I think that the problem here in this case is that he can't establish anything because he was never given anything to look at to see whether there was something there or not. But we don't know if there's anything there. I keep getting back to my problem with the entire premise for the Brady claim, and that is we don't know that anything exculpatory actually is extant or ever was. Right. But on the other hand, I think you also have to look at the cases that say if it may be or if it might be. One is Brady, which it may be, and the other is Carringer, which is it might be. Here we don't even know whether it is a possibility or probability. Both of those cases involved actual evidence that the court could look at and say, in light of this evidence, it might have been viewed as exculpatory by the fact finder. Right, but I think that's what I – And we don't have that here. No, but I think that's what Agent King says. Agent King says that I've – he basically is saying that if this stuff was on this tape, if something was downloaded from this tape, it would have shown that it pointed a gun at me. If it had been working, it would have shown Mr. Sousou pointing his gun at me in the car and threatening to smoke me. That's what the video was. But the problem here is that we're talking about a camera. It's a digital camera that really needed an IT person, expert type of person, to download this camera. Okay, so we've – Because what was on it? So we've established the agent is a klutz. That doesn't make out a Brady violation. I just don't – I can't get past that. Do you want to speak to any of the other issues? Yes, I do. I also want to speak to the self-defense issues, the jury instruction for self-defense. The court relied upon Lemon and said that there was a lack of sufficient evidence. You don't need much, but you need some evidence. Some evidence. And I couldn't find it. Right, and the some evidence that I'm relying upon is, once again, that Agent King is saying to the – tested in the trial that Mr. Sousou – or he believed that Mr. Sousou was – believed that he was threatened by him. And this was during the whole entire scenario in the car, and that sort of comes through on the – it does come through on the audio tape. He's talking about he doesn't want to go back to jail. He doesn't know him. He doesn't want him to see his face. He's seen his face, all of those type of problems. I read that transcript, and I couldn't really see your case in the transcript. It looked to me like the agent's starting to get panicky, and he's trying to lay down on the recording, and I suppose if they're monitoring it as fellow agents, that Sousou is pointing a gun at him and trying to talk Sousou out of killing him, such as by giving the DEA's money to Sousou. Well, I think – Not getting the guns. Okay. I think you're on it a bit. The thing is that what you're really listening to in that audio tape is a response, and I will admit that it's not the best response in the world that you can make, if you were the defendant, and that is when someone – you think you have patted someone down, there's no guns, there's no wires, and he thinks that the agent is a criminal. Also, just like he is in this scenario. Are you saying that fact alone is enough to merit a self-defense destruction? No. That he thinks the agent is a dealer? No, no, I'm not saying that. What is the specific evidence that amounts to, you know, some evidence? I think that the evidence is that the agent himself believed that Mr. Sousou felt very threatened by the entire scenario. Did the agent believe that Mr. Sousou felt threatened? He said that he felt that he was threatened. So what the agent believes is evidence to support a self-defense destruction? That's the first part of it, but there's more to it. I think that is one, and I think the other thing is that you look at all the other cases and what is really necessary. He doesn't have to have – the court doesn't have the sufficient evidence. It has to have some evidence under Ruiz, and under Sanchez-Lima, it can be weak, it can be insufficient, inconsistent, doubtful credibility, but the jury instruction should be given because really what it does is it leaves him, leaves the defendant with absolutely no defense whatsoever in this type of a case. And is the self-defense legally sufficient? I would look again to – Just a minute. So what are you saying? The fact that the evidence to support the charge itself is weak. I mean, that's enough to merit a self-defense instruction? I'm not following you, Your Honor. I'm sorry. Well, I'm not following you. I mean, what is the, you know, the some evidence? One, you said that the agent believed that Sousou was scared. Is there anything else, any other evidence? The agent – I mean, what was the argument of the jury, the, you know, evidence on which you should return a, you know, verdict of self-defense? The agent attested at the trial that Mr. Sousou believed that he was threatened, right? Right. Would you point us to the excerpt say – Yes, it is. I believe it's zero. It's our excerpts, and it's 099. Thanks. I wanted to address that. Those were the main two ones. No, no, wait a minute. The main two. What's the second part of the two? 099 is argument. I'm sorry. In ours? I just wanted to follow the answer to Judge Tshima's question by looking at the evidence. He said your citation was just an argument. What I'm trying to get at is, so what is the evidence? The evidence is one that the agent believed that Sousou was scared. Is there any other piece of evidence that supports the self-defense instruction? It's not just that the agent believed that Sousou was scared, that the agent, that Mr. Sousou, believed that he was threatened. And what evidence is there of that, that Sousou believes he was threatened? That comes from Agent King. That's the problem with this case. Agent King is the main prosecution witness. The defendant doesn't have to testify to anything. And basically it's just the two of them here in this case. So he wants a self-defense instruction, but he didn't testify to any of this. He didn't testify to anything. Right. Wait a minute. Now, the agent testified that Sousou believed that he was threatened? Yes. Now, where is that? That, Your Honor, I thought was at 099. And the other sighting that I had was 117 in Volume 2, I think it was, of the excerpts from the – It's not 117. It's not 117. Well, I'm sorry. It escapes me at this point then, Your Honor. I thought you might have a sticky on it and a markup there. The other thing is that with the assault in the auto, Agent King also testified that he didn't see a bullet in the chamber and he didn't see if the gun was cocked, and that is in the excerpts of the defendant. Wait a minute. King testified that he did not see those two things? Yes, he did. In the weapon that your client was holding on him? Yes. So what does that have to do with self-defense? Well, I'm just saying that those are two of the things that he did testify to also when he is the one that's saying that we've got a loaded gun on me. I still don't make it. Well, you know, that might go to an argument that there was no assault. Right. But I don't know if it goes to self-defense. Right. All right. So I understand your argument. Now, anything else that amounts to, you know, self – I'll call it self-defense evidence? This was the main thing. That's the main part. All right. Yes. Yes. May I reserve? Thank you, Counsel. Good morning, Your Honor. My name is Kevin Feldes, and I represent the United States, and I was trial counsel in this case. May it please the Court. The district court in this case found that there was no evidence to preserve. It's a little delicate not producing the camera. Now, the defense made very effective work of the non-production by telling the jury they had a video camera and we don't get to see the video. Wonder what they're hiding. Good way to deal with it. Still, sure would be nice to have somebody besides the prosecution verify that the agent forgot to turn it on and there's nothing on the video camera. The agent was inaccurate in what he said about the words. The audio proved he was inaccurate. So it sure would be nice for some neutral party and not just the prosecution to verify that there really was nothing on the video camera. What could be so secret? Everybody now has video on their little $99 digital cameras. There's nothing very technical about uploading it to your computer. My guess is it's hard to find a 12-year-old that doesn't know how, or for that matter a person in his 60s who doesn't know how. Everybody knows how. And everybody's either looked at or seen ads for very small and surreptitious video cameras or ones that could be used pretty surreptitiously. What's the big secret? And what justification can there be for not letting somebody neutral verify that there's nothing on the video camera? Well, to address that question, Your Honor, your first point I think is the correct one. This was a trial strategy by Mr. Suey Suey about how to approach this issue. Well, it's how to deal with the fact that they don't get to see the video camera. There was no request made to review this video device until halfway through the trial. They didn't know it existed until then. In his opening statement, defense counsel made this a big part of what his case was going to be about. He said the government lost evidence, there was missing evidence, and he used the words the government bungled this case. What did you tell them before the trial about the video camera? Exactly what they learned from Agent King, that there was a device and it didn't record and there was no evidence. In fact, when he was cross-examining Agent King on the witness stand, he referred to the very report that he had been given, defense counsel had been given, which referenced item 002, video. He asked Agent King about that. Look, there's a piece of evidence that's missing. And that's when you see Agent King testify, contrary to what we heard, and this is at volume two, page 183. Agent King says there is no evidence. Once we handed that device off, we realized there was nothing recorded. So let's get back to my question now. What is the justification for not letting the defense or, if it's really secret, the judge verify that there's really nothing on that video device? Well, in the context of this case, it was day three or four when the defense counsel requested to actually analyze that device. There had already been two continuances of trial, including one that was on the eve of trial. The district judge had to weigh the factors here. The district judge heard the testimony of the agent, decided that there was no evidence  Did he base that on taking a look at the video camera in Chambers or just on taking the agent's word for it? The testimony of the agent about what had been done and that nothing was recorded. But in the context of this case, why should he be required to take a look at the video camera in Chambers? Well, I doubt there was anything the district court could have done by looking at this device. Well, you could turn the switch from off to on and look at the LCD. In this case, there was no... Probably press that reverse arrow that shows you what you've got on it. This was a decision by the defense of how to approach this issue. They could have requested it before. Just a little bit on Judge Kleinfeld's question. First of all, when the request was made by the defense to look at the camera device itself, right? And this was like three or four days... That was mid-trial. Three or four days into the trial, right? Right. And was it clear? Some kind of hearing was held on that request, right? Yes, Your Honor. And at that hearing, what? Did the defense... Was it clear that the defense needed like a continuance in order to examine it? Yes, Your Honor. How did that come out? The judge... No, I mean that the defense needed a continuance. Did they say, you know, we'd like a continuance so we can send this to an expert or what? How did that come out? That was their request. We would like, Your Honor, to order that this device be produced and we need time. We want to send this to an expert to determine whether there was anything on there. So it was clear that a continuance would have been required. Yes, Your Honor. And the district court ruled against that and the district court found that there was no evidence to preserve when he decided and rejected a request for instruction. Let me back up now. Is it also clear that the defense knew before the trial commenced that there was this camera that, according to the government, didn't work, right? Yes, it is clear and it's referenced in the opening statement. Several days or several weeks before trial? How long ago? He knew several weeks before trial. He was aware of that and had a copy of the agent's report referencing item 002, which was marked video. It was explained to the defense counsel that nothing recorded and that seemed to the government to resolve the issue. In the opening statement, the government got beat up on this very heavily. It was the trial strategy of the defense. Again, Agent King was beat up on this on the stand and he answered the questions. When he tried to explain more, there was hearsay objection about testimony from other agents. The defense could have called other agents if they wanted to, too, to explore this. But this is all in the context of a very, very compelling audio tape that captured every detail of this transaction. The agent testified about exactly what happened and the informant testified. So all the evidence was clear and overwhelming. Just because the defense wanted a few days to have an expert look at it doesn't mean that the judge would have to go all the way with them or no way at all. The judge could have said, well, don't know about that, but at the end of the trial day today at 430, I want you to bring that into chambers and I'll take a look at it and decide where to go from there. Judge Burgess could have done that. He didn't. He didn't abuse his discretion in doing that. What we're alleged now is an alleged body violation. Why not? It's so simple. And, you know, maybe this is – I don't know what you've got either. Maybe this is some mysterious James Bond device too complicated for AT&F agents to work. But maybe it isn't. I don't know. No one would have been happier than Agent King to show the video playing of what he felt and how he almost lost his life on March 15th. Well, it would also be nice to verify that, as he says, there's no video. And that's the end of that. Judge Burgess could have done that. This particular device, as the court ruled, AT&F did not have to reveal the secret nature of the device. But it's not a device in which you can hit play and see it on a video screen. It was something that they would have – if anything were to have been captured on this device, then it would have had to have been downloaded. They weren't able to do that. You've got your Bluetooth activated, downloaded. It says file 0010 seconds. And if the defense had made that motion prior to trial, they may have had the opportunity to do that. Counsel, do we know anything about what this device is? I take it this is not something I can go down to Radio Shack and buy off the shelf. Correct, Your Honor. And so what we have here is something that the defense tried to use as a strategy, and now they are trying to use it as a strategy here to raise a Brady violation when there is no evidence, and there's certainly no indication that what would be on the video would be a disculpatory. My problem with the case, I don't know if you picked it up, is I've got to take your word for there being no evidence. Well, we have the testimony of the agent who testified. I've got to take his word for it. I've got to take the government's word for there being no evidence. And it's kind of nice to have neutral arbiters, judges, make those decisions. Well, that's why Judge Burgess did do it very carefully. Didn't the judge make a finding that there was no evidence? He did make that finding specifically. And Judge Burgess took this matter seriously, and Agent King was allowed to be recalled on this matter, and there were arguments outside the presence of the jury on the matter. So it was treated very seriously, and Judge Burgess had to make a decision, and he didn't abuse his discretion in how he ruled on these evidentiary matters. Now we're here for a Brady violation. And, of course, we submit, as the Court noted, that there was no evidence, and every indication was that this happened exactly as recorded on the audio tape. There has to be some basis for such a Brady motion, and there's absolutely no basis here. Your time is running low. I'd really like to hear you on another subject. I'd like you just here for you to summarize just as briefly as you can. This is on the self-defense. One, the evidence that there was an assault by the defendant. All right? And two, evidence that would support a self-defense instruction. Now I know you were trial counsel, you said, right? Yes, sir. So you must have thought there was some evidence because you said, well, out of an abundance of caution, government agrees you should give that instruction, right? So you must have thought there was something, that, you know, maybe some appellate judge who didn't know trial practice might, you know, make a mistake on it at least. But anyway, you thought there was something, right? Well, the evidence was so overwhelming in this case, when it finally came down to it, you're correct, Your Honor. I said, you know, Your Honor, we won't object. We'll leave it to your discretion. You can give this instruction. And we'd avoid being here today. Judge Burr just carefully analyzed this issue, and he looked at it carefully, and it's in the record. And he found there was absolutely no evidence that would support self-defense. Well, what is the best evidence that could support? There's none. There's absolutely none. Agent King didn't testify that Mr. Suisui was afraid. Quite to the contrary, if we look at the factual record, which I don't think is clear in the defendant's brief, before Agent King even announced that he had a gun, and he did that to protect his own life because he was sure he would be shot if it were found unexpectedly, before that happened, Mr. Suisui said, this is where I have to smoke you. You have seen my face, meaning you've seen my face and you have to go, and I'm not going back to jail. Then he told him to take off his jacket, and then he took off his shirt. By the way, what is the assault? Is it like that the defendant pointed his gun at the agent? He put Agent King in fear for his life at that moment or during this whole conversation. By pointing the weapon at him. By pointing the weapon and telling him, I have to smoke you now, and you've seen my face. That's the assault? Yes, Your Honor. All right. And there's no challenge to that. No, but I'm just trying to get the context for the self-defense argument now. Sure. That's the argument, and there's some, at least, argument that, you know, I mean, who was pointing the gun, right? There was no question about who was pointing the gun. It's clear. You think it's clear from the, well, at least from the transcript of the audio recording that it was the defendant? Oh, absolutely, and Agent King says, don't, see, I'm supposed to. He's the one who said, like, you know, I have a chamber, a round in the chamber. I've got one in the chamber. He's the one who talked about smoking. Yeah, if you look at the, it's in the excerpts of record, volume five, starting around page 120 or so, we'll see that Mr. Suisui is specifically talking about, I've got one in the chamber, dog, that's where I'm supposed to smoke you. Let me ask my question a different way. Suppose you were representing the defendant. What would you argue is evidence that supports self-defense? There is no evidence here. There's not one scintilla of evidence here. You just confess there's no evidence, huh? There is no evidence, Your Honor, that would support that, and everything in the jury, it was quite compelling, and the jury, of course, ultimately found, had no problem finding that he was put in fear for his life. But your point now mentioned two things. One, that the agent testified, right, that Suisui was scared, and two, he also testified that Suisui believed that he was threatened. I don't think that that's an accurate reflection of the record. You don't recall those statements from the agent in the record? No. He was, the agent was afraid that Mr. Suisui might be, react badly when he realized that the agent had a gun on his person. This is when the gun is a foot from his face. He'd already seen that the gun was, in fact, loaded. He recognized the specific ammunition for this case when Mr. Suisui showed him the cartridge, loaded the gun, and kept it pointed at him. Not only did he point it, he threatened to kill him. That's the bottom line. This agent was doing everything he could to struggle for his life. The idea of self-defense was not supported by the agent. Was this audio being broadcast to the other agent? It was, Your Honor, and Agent Pelosi testified at trial, so there was actually a third witness overhearing this who testified exactly what he was hearing on this audio tape and what he perceived to be happening, and that was exactly that Mr. Suisui was about to shoot. It read to me as though the confidential informant and the agent were both trying to tell the other agents around what was going on. That's right, Your Honor. That's what happened here, and Agent Pelosi, who testified at trial, was listening to this and testified consistently with that. On the career offender provision, we believe this is a clear case where the military conviction is given full freedom and credit under Williams, and this is a straightforward Taylor analysis. This comes within four corners of a burglary of a dwelling. If there are no other questions on any other points? No. Thank you, Counsel. Thank you, Your Honor. Thank you. I think you reserved a half minute or so. Okay, just a few things. One is as far as to the courts with the delay and the defense counsel asking for the Brady materials and for the Jinx materials. Like I said, I was not the trial attorney. Mr. Koh was, and Mr. Koh, I have spoken to him numerous times about this case, and he has told me that he did not know about the video camera until the day of trial, the morning of trial, and that's why there was not a motion made to dismiss this case until halfway through the trial. I believe it was the fifth day of trial. That's when it started. And there was no expert testimony from the prosecution about this video recording at all. It is true that Mr. Koh, in his opening statement, made reference to the bungling of the video. Yes, he did. And is it also true that he didn't make the request until about the third or fourth day of trial? Well, as far as that motion to dismiss, Your Honor, but he told me that he had made a request for Jinx and Brady's material approximately a week before the trial, and that he got only what they gave him, and that did not include this information about the video camera. Counsel, I have a little bit of a problem deciding a case on the basis of something that's not in the record. I understand that, Your Honor. The record shows that he did make reference to it in his opening statement. That's correct. And it wasn't until the third or fourth day of trial that he actually requested protection. That he asked for the motion to dismiss. Yes, Your Honor. And that included a request for a continuance of the trial because it was going to take some time to examine the gear. Yes. We think the examination could have been done in about 24 hours, Your Honor. Thank you. Okay. I have another question, and I don't know who to ask it to. I've seen catalogs advertising what they call babysitter cameras or nanny cameras, and what it does is it broadcasts to your home computer so that you can have a surreptitious video device that's recording the babysitter or nanny, and if you load your software on your computer, it can read what the camera is sending. I'm inferring that since you've represented that you can't just turn the camera on and look at the LCD screen, this must be something along those lines. Am I out of line here? Your Honor, my understanding of the device is that it's a micro device, and it doesn't actually transmit the video. They weren't watching this on video happen. The main device they used was the audio that was feeding live, and that was on the informant. They were so afraid that if Susu found any other device, he would shoot the agent, that this was a micro device that simply wasn't used properly. Thank you. United States v. Susu is submitted. Want to recess? Let's take a recess for five minutes. Recess. Recess. Whatever you say. All rise.
judges: Kleinfeld, Tashima, Tallman